Henry Schoellkopf, Plaintiff, v. Emma C. Gallagher et al., Defendants.
Continental Illinois National Bank and Trust Company of Chicago et al., Appellees, v. Eunice M. Kennedy et al., Defendants. Eunice M. Kennedy, Appellant.

Gen. No. 41,714.

Heard in the second divi-

sion of this court for the first district at the June term, 1941. Opinion filed November 17, 1942. Rehearing denied December 8, 1942.

URION, BISHOP & SLADKEY, of Chicago, for appellant; HOWARD F. BISHOP, JEROME J. SLADKEY and ROBERT F. DEWEY, all of Chicago, of counsel.

MAYER, MEYER, AUSTRIAN & PLATT, of Chicago, for certain appellees.

HERBERT G. IMMENHAUSEN, guardian *ad litem,* for certain appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

A bill in chancery to construe the will of Henry Schoellkopf, Sr., deceased, was filed in the above cause in 1916. A decree was entered on December 27, 1916, in which the court reserved jurisdiction for certain purposes. On June 21, 1940, by leave of court, a "petition in the nature of a cross-bill" was filed in the same cause by "Continental Illinois National Bank and Trust Company of Chicago, a national banking association, The Northern Trust Company, an Illinois banking corporation, and Ida S. DeVry, as Trustees under the Last Will and Testament of Henry Schoellkopf, Sr., deceased, and under the Settlement Agreement of April 17, 1916 . . . ., Edward Gallagher, Patrick L. Gallagher and Continental Illinois National Bank and Trust Company of Chicago, as Trustees under the Last Will and Testament of Emma C. Gallagher, deceased, and as Trustees under a certain Trust Agreement dated July 27, 1934, Ida S. DeVry, individually, Harris Trust and Savings Bank, as Trustee under the Last Will and Testament of Edward C. Schoellkopf, deceased, Emma C. Allen, Edna C. Bell, Elsie DeVry Barker, Minnie D. Burton, Henry W. DeVry and Carl DeVry." Eunice M. Kennedy and

Roland H. Lueder, a minor, were made defendants. The petition prayed, *inter alia,* for authority to sell the premises at 174-176 North Michigan avenue, Chicago, and for leave to take such other action as might be necessary to terminate certain trusts. After a hearing before a master in chancery a decretal order was entered, on November 15, 1940, which authorized the trustees, "as Trustees under the last will and testament of Henry Schoellkopf, Sr., deceased, and under the Settlement Agreement of April 17, 1916," to sell the said property for $200,000. From this decree Eunice M. Kennedy, hereinafter called appellant, appeals. The other defendant, Roland H. Lueder, through his guardian *ad litem,* asks this court to affirm the decree.

Henry Schoellkopf, Sr., died testate on January 2, 1916. Five children, Henry Schoellkopf, Jr., Edward C. Schoellkopf, Minnie DeVry, Ida DeVry and Emma C. Gallagher, survived him. His will, dated July 2, 1914, was admitted to probate in the probate court of Cook county on April 18, 1916. It provided, after certain specific bequests, that the residue of the property go to Henry Schoellkopf, Jr., in trust, with a division of the net income of the trust into five equal parts, one-fifth to each of the sons and one-fifth to be set aside for each daughter, and that certain specific amounts be paid annually out of such income to each of the daughters. It further provided that the balance of the three-fifths income reserved for the daughters be added to the principal of the three trusts of $150,000 set up for the three daughters; that the trust created should terminate at the end of ten years from the testator's death and that the trustee should then divide and partition the trust estate, subject, however, to the provision that at the end of ten years the trustee should further divide the trust estate and create and establish three separate trust estates of $150,000 each for each of the daughters, and that all the rest of the principal of the trust should then (at the end of ten years) be divided

equally between the two sons. The will further provided that the trustee should hold the principal of the three trusts for the three daughters, paying certain amounts of the income therefrom to the beneficiaries therein named until the youngest surviving child of Ida DeVry reached twenty-one years of age (a like provision as to Minnie DeVry and Emma C. Gallagher), when the principal was to be distributed. At the end of the ten-year period the value of the trust estate was approximately $2,800,000. The assets of the estate included certain real estate known as 174-176 North Michigan avenue, Chicago. The three daughters were dissatisfied with the provisions of the will and threatened to contest its validity, but on April 17, 1916, the five children executed an agreement which stated that it was the desire of all of the children that the plan of distribution under the will be modified so as to equalize the shares of the five children at the end of ten years from the testator's death, and it provided that the two sons should convey to trustees therein named, namely, Henry Schoellkopf, Jr., Edward C. Schoellkopf and Continental Illinois National Bank and Trust Company, a sufficient part of the estate to which they were entitled under the will, which part would, when added to the three trusts created by the will for the three daughters, equalize the respective shares of the five children. The trustees under the will were to continue as such after the ten-year period only as to the $150,000 estate of each daughter, and the trustees under the agreement held the balance of the estate. The total estate for each daughter aggregated one-fifth of the two trust estates. The agreement provided for similar powers and provisions for the trustees, created under the agreement, as were provided for the trustees under the will. The agreement further provided that a bill in equity should be filed to construe the will and for the appointment of Edward C. Gallagher and the Continental Illinois National Bank and Trust Company as

additional trustees of the trust estate created under the will of Schoellkopf, Sr. While the bill that was filed in the instant cause, on May 24, 1916, asked for a construction of the will it is clear that the paramount purpose of the bill was to obtain a judicial approval of the agreement. The bill was filed and the decree was entered with the consent and approval of the five children of the testator. The decree recites the will of Henry Schoellkopf, Sr. Paragraph (8) of the decree recites:

"(8) The court further Finds that doubts and differences have arisen and exist between some of the beneficiaries under said will of said decedent with reference to the true and proper construction and interpretation, intent and meaning of said will with respect to the provisions hereinafter referred to, and various conflicting claims have been made by the different persons hereinbefore named relative to the meaning, construction, validity and legal effect of certain of the provisions, devises and trusts contained in said will, and that by reason of said doubts and differences and conflicting claims the complainant is embarrassed and hindered in the management of said estate and in the performance of his duties as Trustee under said will; and that all of said uncertainties, differences and doubts with respect to the construction, meaning and effect of said will should be settled, determined and set at rest, *and that the complainant and the others who may be appointed to serve with said complainant, as Trustees, under said will, require and should have the advice and direction of this court in the premises in order to properly administer upon said estate and carry out the provisions of said will . . . ."* (Italics ours.)

The decree further provides:

"That under and by virtue of the provisions of the said last will and testament of said Henry Schoellkopf, deceased, the complainant, Henry Schoellkopf, has

such an estate and title in and to all the property bequeathed or devised to him in said will, that he has full power and right in his individual capacity to at once make a valid sale, transfer, assignment and conveyance thereof, subject only to the legal title and the powers of the Trustees under said will and this decree, and that he also has full power to bequeath, or devise the same by will, subject only to said legal title and powers of the Trustees under said will and this decree.''

The decree contains a similar provision as to Edward C. Schoellkopf. Paragraph (12) of the decree reads as follows:

''(12) That paragraph Thirteenth, clause (1) in said will, was not intended to and does not prevent a conveyance of the interest of any party under the said will from being effective at whatever time such interest is distributable under said will; that any, or all of the beneficiaries under said will have, notwithstanding said clause (1) full power and the right to enter into valid, binding agreements for a distribution of said estate among themselves in whatever manner and portions they may desire, and also, subject only to the trusts created by said will, as herein construed, to make valid sales, transfers, assignments and conveyances of their respective interests in said estate.''

The decree also contains the following provision:

''That the said complainant, Henry Schoellkopf, and his two co-trustees appointed hereunder shall have and exercise, and they are hereby vested with all the rights, powers, authorities, discretions and duties vested in and imposed on said complainant, Henry Schoellkopf, in and by said last will and testament of said Henry Schoellkopf, deceased, . . . and any sale, conveyance, lease, exchange, mortgage, investment, distribution, division, partition or disposition of any kind of any property belonging to the estate of said decedent, Henry Schoellkopf, or other act in con-

nection with said estate, which shall not be joined in by said complainant, Henry Schoellkopf, or his successor and said Edward C. Schoellkopf or his successor shall be invalid and void, and not binding upon said estate of said decedent, Henry Schoellkopf, or on any of the parties at any time interested therein unless it be approved or ordered or decreed by this court.''

The decree contains a provision appointing additional trustees for the trust estate created under the will, *as was provided for in the agreement.* It also contains findings that, in effect, carry out the provisions and purposes of the agreement. The decree also contains the following provision:

''Any of the parties hereto are at liberty to apply to this court, from time to time, for further direction and advice as to any matter in connection with the performance of the duties of said Trustees *in carrying out the terms of said will, as interpreted and construed by this decree,* or in case all three of said Trustees or their successsors shall at any time be unable to agree as to any matter in connection with the performance of their duties *in carrying out the terms of said will as interpreted and construed by this decree, and the court reserves jurisdiction over this cause and over all the parties hereto for that purpose.''* (Italics ours.)

At the end of the ten-year period fixed by the will a new agreement was made, on April 12, 1926, between the trustees under the will and the five children, which recited that it was advisable to extend the ten-year period for distribution provided for in the will, under which provision all of the trust estate except the three $150,000 estates reserved in trust for the daughters was to be distributed to the two sons. It further provided for an immediate payment of $50,000 to each of the beneficiaries and extended the time for distribution of said trust estate to October 1, 1926, and that the beneficiaries might thereafter extend the period

again by an agreement in writing; "and further recites beneficiaries desire an immediate payment of $50,000 each on account of the principal to which they are respectively entitled under the agreement of April 17, 1916, and the personal estate in the hands of the Trustee is insufficient to provide for the creation of the three special trusts, and that the Trustees are willing, upon the terms hereinafter specified, to make such payments."

Some of the beneficiaries under the will died leaving heirs. There were changes of trustees in the trust created by the will and the trusts created by the agreement, but the changes in the personnel of the trustees were identical as to each trust. The instant petition described nine parcels of real estate that remained in the trust; defined the interests of the various parties therein (*that of appellant being eight one hundred eightieths in eight of the parcels and nine one hundred eightieths in the ninth parcel*); it set up an offer of $200,000 for the property known as 174–176 North Michigan avenue; alleged that there had accrued expenses and taxes, making it impossible to terminate the trusts; alleged that all of the parties except appellant and a minor beneficiary, Roland H. Lueder, had agreed to enter into a liquidation agreement, and that the appellant had arbitrarily refused to agree to the sale of the Michigan avenue property for the sum of $200,000. Paragraph 16 of the petition reads as follows:

"Your petitioners further represent that in and by said decree heretofore entered herein on December 27, 1916, it was provided that any of the parties hereto are at liberty to apply to this court, from time to time, for further direction and advice as to any matter in connection with the performance of the duties of said trustees in carrying out the terms of said Will as interpreted and construed by this court, and that in and by said decreee this court expressly reserved jurisdic-

tion over this cause and over all of the parties hereto for that purpose.''

The petition prayed that the court authorize the ''trustee petitioners'' to sell the said premises at 174–176 North Michigan avenue, Chicago; to execute and deliver deeds, etc.; to distribute the net proceeds of said sale to the creditors of said trusts, and the claimants of the estate of Minnie S. DeVry, deceased, including the trustee petitioners and their counsel, and to the beneficiaries of said trusts; or, in the alternative, in the event the court should fail or refuse to authorize the trustee petitioners to sell said premises, that the court order a division and partition of the premises described according to the respective rights of the parties, or that if a division and partition of the same cannot be made without manifest prejudice to the owners, a sale thereof be made and proceeds divided according to the respective rights of the parties. The petitioners further prayed for directions as to the disposition of the remaining assets of said trusts, for leave to terminate the same and for the approval of the final accounting of the trustees, and for leave to join in a conveyance to liquidation trustees in accordance with the liquidation trust agreement which would be presented to the court and which has been executed by all of the persons who are beneficially interested in said trusts, except appellant and the minor; and that the court, pending the final disposition of the assets of said trusts, authorize the trustee petitioners to continue to operate said properties and to make leases and agreements to sell the same, and for further relief, etc.

The answer of appellant ''admits that the petitioners have a right to apply to this court for direction and advice but denies that this court reserved jurisdiction for the purpose of entering a suit for partition of any of the property herein, and therefore denies the jurisdiction of the court in this suit.'' The petitioners

then waived the prayer for partition. Appellant then filed a petition for a change of venue from one of the judges of the superior court and an order was then entered assigning the cause to another judge. The petitioners then moved that the cause be referred to a master. Appellant opposed the motion, and upon her motion she was allowed to file an amended answer, in which she "admits that there was a reservation of jurisdiction in said original decree for certain purposes, but not exactly as concluded in said paragraph [16], and that some of the petitioners have the right to apply to this court for certain directions and advice under the terms and provisions of the original decree, but deny that any of them have the right to apply to this court for any of the relief herein asked in this proceeding, that said original bill to construe the will was entirely concluded and disposed of by the final decree therein except as to further advice or instructions in connection with the provisions of that decree and that there is no authority or jurisdiction over the subject matter of the petition filed herein, or of the parties, nor any authority or jurisdiction to bring in this defendant as a new party, therefore, that the court has no jurisdiction to grant any of the relief prayed for." The answer denies that $200,000 was a sufficient consideration for the sale of the premises in question.

The cause was referred to a master, who heard evidence and filed a report, in which he found, *inter alia*, "that the Trustees still have the power to sell the property held by them as Trustees under said will and said Settlement Agreement; that the offer of $200,000 cash is a fair price for the property described as Parcel No. 1, and commonly known as 174–176 Michigan Avenue, Chicago, Illinois, and it is for the best interest of all parties that said property be sold for said sum." The master recommended that an order be entered providing for the orderly liquidation of the re-

mainder of the properties held in said trusts by the sale of said properties at public or private sale as expeditiously as possible under the direction of the court. The decree entered November 15, 1940, finds, *inter alia,* that the court has jurisdiction of the subject matter of the petition and the parties and that the petitioners properly filed their petition; approves the report of the master; finds that "the Trustees were given the power to sell the property held by them as such Trustees in both said will and the Settlement Agreement," and that "the power to sell the property hereinabove set forth is still vested in the successor Trustees"; finds that the offer of $200,000 cash for the Michigan avenue property was a fair price for the premises and that the trustees exercised their discretion in good faith in entering into an agreement with Austin Wyman to sell said premises to him; that all of the beneficiaries except appellant and the minor defendant have approved the sale. The ordering part of the decree provides that the said trustees "as trustees under the last will and testament of Henry Schoellkopf, Sr., deceased, and under the Settlement Agreement of April 17, 1916," are authorized to sell the said property to said Wyman for $200,000; to execute deeds and documents to effectuate the said sale and that the net proceeds of the sale be distributed to the creditors, the owners of claims, and to the beneficiaries in the proper proportion; that the trustees are authorized under the direction of the court to sell all the remaining parcels of real estate and if satisfactory offers are not received within sixty days, then the master is directed to sell the same at public auction after three weeks' public notice of such sale. The court reserved jurisdiction of the cause for the purpose of liquidating and terminating the said trusts and to assess costs of proceedings, etc. It is from that decree that appellant appeals.

Appellant contends that the decree should be reversed and the cause remanded with directions to dismiss the petition "because the lower court had no jurisdiction in the old proceedings over the new trust and the new trustees." Appellant also contends, as we understand the contention, that after the expiration of the ten years provided in the will the trust provided for in the will became a dry trust with no further duties in the trustees and thereafter the trust assets were administered by the new trustees under the terms and provisions of the settlement agreement; that "in the instant case after the execution of the settlement agreement which disposed of the interests of the two sons effective at the expiration of the ten-year period, the old trustees had no further obligations and if the conveyances in the settlement agreement did not operate as conveyances (which clearly they did), then the Statute of Uses nevertheless executed the trust and vested the fees"; that "the old trust (except as to the three $150,000 trusts for the daughters) was to terminate by the Will at the end of ten years, and distribution was directed to be made so that the trust as to the bulk of the real estate thereupon became a dry trust with no duties to be performed, and the Statute of Uses executed the trust and vested title in the beneficiaries." After carefully considering the instant contention and the arguments in support of it we are satisfied that appellant's contention "that the decree should be reversed and the cause remanded with directions to dismiss the petition" should not be sustained. It will be noticed that the original answer of appellant merely questioned the jurisdiction of the trial court to order a partition of the premises. While the amended answer alleges "that the court has no power, authority or jurisdiction to grant the relief prayed for," in her reply brief appellant states: "Had the petitioners petitioned for instructions re-

garding whatever small portion may have remained in the old trust, or had they sought leave to sell that portion, and had they identified and established such a portion, the defendant would not have questioned the jurisdiction of the court to entertain such a petition, as it appertained to the old trust estate only.'' Appellant further states: *"Defendant does not dispute that a court of general jurisdiction, in a wholly separate and new suit, would have jurisdiction over a proper and similar petition and that then the rules regarding courts of general jurisdiction would be applicable, but they are not applicable under the circumstances of this case"; that the proper procedure for the trustees would be to file a new suit and submit their petition to a court of general chancery jurisdiction.*

The decree of December 27, 1916, was entered upon the prayer of the five children of Henry Schoellkopf, Sr., one of whom was Minnie S. DeVry. She and her two sisters as beneficiaries under the will were greatly benefited by the generosity of the brothers and by the decree. Minnie died in 1936. One of her children, Bernard DeVry, Jr., married appellant. After the death of Bernard DeVry, Jr., in December, 1936, appellant married Edward Kennedy. Appellant derived her interest in the estate through Bernard DeVry, Jr.; he derived his interest through his mother. By the terms of the decree of 1916 Minnie S. DeVry became a successor trustee under the will and she acted as such trustee until her death, and as such trustee she joined in the execution of various leases of properties that formed a part of the estate of Schoellkopf, Sr.; *a fortiori,* she joined in the extension agreement of April 12, 1926. Neither the trustee under the will nor the additional trustees under the will that were appointed under the decree of 1916 conveyed any interest in the trust estate under the will to the beneficiaries under the will or to the other trustees, and they retained title to the trust assets, and they, in-

cluding Minnie DeVry, continued to operate the trust under the will and as trustees under the settlement agreement. In the agreement the trustees under the will did not agree to convey anything to anybody, but Henry S. Schoellkopf, Jr., and Edward C. Schoellkopf, as individuals and beneficiaries under the will, did agree therein to convey to the trustees, at the end of the ten-year period, a sufficient part of the estate to which they were entitled under the will, which part, when added to the three trusts created by the will for the three daughters, would equalize the shares of the five children. While the original decree decreed that the will did not prevent a conveyance of the interest of any beneficiary and that the beneficiaries had power to enter into a binding agreement for a distribution of the estate amongst themselves in whatever manner and portions they might desire, it was expressly provided that such agreements and distributions were subject to the trusts created by the will. Because of the real estate depression it was difficult to sell the properties, and the trust created by the will continued to function long after the time that the trust assets were to be sold or distributed. All of the interested parties, including appellant, knew that the trust under the will was continuing to function. Leases were signed by the trustees, "as trustees under the Will of Henry Schoellkopf." Some of these leases were submitted to appellant. Accounts of the trustees under the will were submitted from time to time to the beneficiaries, including appellant and her predecessors in interest, and no objections were made by them to these accounts. In the agreement dated April 12, 1926, made at the end of the ten-year period, between the trustees of the estate of Henry Schoellkopf "under his will and the decree below mentioned, and under a certain settlement agreement between the parties hereto dated April 17, 1916," and Henry Schoellkopf, Edward C. Schoellkopf, Emma C. Gallagher,

*Minnie DeVry* and Ida DeVry, it was recited, *inter alia,* that it was the desire of the beneficiaries that the trustees should so far as practicable make distribution of said estate in cash and securities rather than in real estate, and it was therefore necessary and advisable to extend the time for distribution in order that the real estate might be disposed of without the sacrifice attendant upon a hurried or forced sale; and it also provided that ''the time for completing the distribution of said General Trust Estate is hereby extended to and including October 1, 1926, and may, by an instrument in writing, signed by said Beneficiaries alone, be thereafter extended from time to time for such additional periods as may be stated in any such instrument.'' It further appears that at the bottom of the extension agreement of October 1, 1926, there is a memorandum, signed by the five beneficiaries, providing for the extension of the distribution of the general trust estate to May 1, 1927. Under the facts of this case we are unable to agree with appellant's argument that the trust under the will became a dry trust at the expiration of ten years from the date of the death of the testator. Appellant, under the facts, should not be heard to raise such a contention. The fact that another trust was created by the settlement agreement did not oust the court of jurisdiction in the original proceedings to advise the trustees and give them directions as to the administration of the trust under the will.

Appellant admits that a court of general jurisdiction in a new suit would have jurisdiction of a petition similar to the instant one. The petition filed was as informative to appellant in the instant proceeding as it would be if it were filed in a new proceeding. She has had her day in court and a full opportunity to show that the offer for the property was inadequate. She vigorously contested the issue as to whether the offer of $200,000 was a fair one and she concedes that if her contention in that regard had been sustained by the trial court she would not have appealed from the

decree entered. Why, therefore, under our present liberal system of pleading and in a court of equity should plaintiff be heard to raise the contention that petitioners, to succeed, must file a petition similar to the instant one in a new proceeding?

Appellant states that if we hold against her as to the jurisdictional point that she then desires to contend that the decree should be reversed because "the price of $200,000 for the Michigan Avenue property was wholly inadequate." After a careful consideration of the entire evidence that bears upon the subject we are satisfied that the contention is without merit. The uncontradicted evidence shows that appellant took the position that she would not approve nor disapprove the sale of the property, and that "she felt the other interests should buy her out." In her reply brief she states that if the other beneficiaries desired to pay her "the fair value of her share, it would have been acceptable and would have avoided the present law suit." It is a reasonable inference from the evidence that appellant, because she did not succeed in forcing the other beneficiaries to pay her what she considered a fair price for her share in the property, concluded to make them all the trouble that she could in the instant proceedings. It is significant that all of the beneficiaries save appellant approved the sale.

It appears, from an affidavit filed in this proceeding, that appellant failed to file an appeal bond in the instant proceeding and because of that fact the petitioners, in accordance with the terms and provisions of the instant decree, consummated the sale of the premises at 174–176 North Michigan avenue and executed and delivered to the purchaser, Austin L. Wyman, a deed conveying to him the said premises; that Wyman paid to the trustees the consideration for the premises and that thereafter, in accordance with the terms of the said decree, the trustees distributed a part of the proceeds to the creditors of the trusts and to all beneficiaries thereof except appellant, who re-

fused to accept her share as a beneficiary; that the trustees, in accordance with the provisions of the decree, sought to sell the remaining parcels of the real estate, but not having received satisfactory offers for the same within sixty days from the date of the decree, the remaining parcels of the real estate in said trusts were offered at public sale by the master in chancery; that after due notice to appellant said sale was confirmed by the court; that no objections were filed to such public sale by appellant; that said decree sets forth the beneficial interests of the various parties in said trusts and that no objection was made by appellant as to her beneficial interest stated therein; that the sale of said properties was approved by the court on February 27, 1941, and that no appeal has been taken by appellant from said order. Petitioners have filed a motion to dismiss the instant appeal upon the ground, *inter alia,* that there is no longer any actual controversy between the parties. Appellant, in her objections to the motion to dismiss the appeal, admits that she filed no appeal bond but contends that if the point she raises upon the appeal, that the trial court had no jurisdiction to enter the order or decree from which the appeal is taken, is sustained, then the decree or judgment of the trial court is void and the purchasers of the property at the trustees' sale can obtain no rights, interest or privileges by virtue of that order. Appellant makes no denial as to the proceedings that took place in the lower court after the time for filing a bond had expired. While there is considerable force in the argument of petitioners in support of their motion to dismiss the appeal, we have concluded to deny the motion.

Feeling, as we do, that appellant has shown no equitable ground for reversing the decree of the superior court of Cook county entered November 15, 1940, the decree is affirmed.

*Decree affirmed.*

SULLIVAN, P. J., and FRIEND, J., concur.